STATE of Oklahoma, ex rel.
OKLAHOMA TAX COM-
MISSION, Appellant,

v.

Don BRUNER and Lellilt Bruner, d/b/a
Chebon's Smoke Shop, Appellees.

No. 65688.

Supreme Court of Oklahoma.

July 30, 1991.

J. Lawrence Blankenship and Robert C.
Jenkins, Oklahoma Tax Com'n, Oklahoma
City, for appellant.

John G. Ghostbear, Tulsa, for appellees.

DOOLIN, Justice.

The issue presented on certiorari is
whether the State of Oklahoma has juris-
diction over the regulation and sales of
tobacco products conducted within the
boundaries of restricted Indian Country.

Petitioner, Don Bruner, a member of the
Muscogee (Creek) Nation Indian Tribe,

(Tribe), is the retail-operator of Chebon's Smoke Shop, located inside Tulsa County, Broken Arrow, Oklahoma. The tract of land where Bruner operates Chebon's is part and portion of the original allotment of Tyler Burgess, original Creek allottee, Allotment No. 4226, as described by the official records of the Okmulgee Agency of the Bureau of Indian Affairs. Bruner has no cigarette retailer's license or permit from the State of Oklahoma for selling non-taxed cigarettes.

Nevertheless, Bruner has sold cigarettes to the general public without affixing excise tax stamps, collecting and remitting sales tax, or filing statutory reports with respondent, the Oklahoma Tax Commission (Commission). Bruner does possess an individual license No. 85–01, issued by the Principal Chief of the Tribe, to operate a tobacco outlet on behalf of the Tribe. The Muscogee (Creek) Nation is a sovereign Indian Tribe recognized by the United States Government. The license authorizing the operation of Chebon's was issued as provided by ordinance NCA 82–14, which establishes the operation of the Tribal Tobacco Marketing System, a scheme for the licensing, regulating, and taxing the sale of tobacco products upon tribal lands or property held in restricted status by a member of the Tribe.

The Commission sought an injunction against Bruner permanently enjoining and restraining his smoke shop from possessing, receiving or selling untaxed and unstamped cigarettes and tobacco products within the State of Oklahoma until Bruner (1) agreed to affix cigarette excise tax stamps to individual cigarette packs; (2) collect and remit all sales tax to the Commission; (3) file statutory reports with the Commission concerning the receipt and sale of all cigarette and tobacco products; and (4) obtain a retailer's license and permit from the Commission to conduct business. In sum, the Commission, apparently not recognizing the sovereignty of the Tribe, contended that it had the right to tax all cigarettes and tobacco products sold by Bruner, regardless of whether the sales were made to Indians or non-Indians.

The district court issued a temporary restraining order, pending a hearing on the Commission's request for a preliminary injunction. Subsequently, the cause was submitted for decision upon the preceding stipulated facts. Bruner emphasized that his tribally licensed smoke shop is operated in Indian Country, and therefore, he is cloaked and protected under the doctrine of tribal sovereign immunity, which bars the Commission's efforts to assert regulatory control over the Tribe's retail tobacco marketing system.

After noting that it had partial jurisdiction over the sale of cigarettes to "non-tribal member consumers," the District Court observed that Oklahoma's cigarette tax could be lawfully applied to sales made to *non-tribal* purchasers of tobacco products. The court also concluded that the Commission had the right to require Bruner to collect sales tax on the State's behalf. Accordingly, the district court issued an order restraining and enjoining Bruner from "any and all sales to non-tribal member consumers of cigarettes unless and until he has obtained the necessary license and permit from the State of Oklahoma," and complied with all pertinent statutes governing the regulation and taxation of cigarette sales.

The Commission appealed the district court's denial to assert jurisdiction over and enjoin the sale of untaxed and unstamped cigarettes to tribal members. The Commission also claimed error in the district court's holding that the Commission was prohibited from imposing the state's cigarette excise tax on tobacco sales made to tribal members. Bruner also sought review of the district court's order contesting the court's jurisdictional authority. Bruner further asserted that the "Commission is without authority or jurisdiction to regulate tax, monitor or otherwise control the sale of tobacco products which occurs on "Indian Country.' "

The Court of Appeals affirmed the district court, holding that since the legal incidence of the State's cigarette and tobacco taxes are imposed on the "consumer/user" of such products, the Commission could

properly require Indian smoke shop retailers to add and collect sales tax with regard to cigarette sales made to non-tribal members. That court found that Indian smoke shop retailers may be required to obtain licenses and permits from the State of Oklahoma to conduct such sales. The Court of Appeals further held that the Commission lacked authority to compel Indian smoke shop retailers to enforce and collect taxes based upon cigarette sales made to tribal members.

Having previously granted Bruner's petition for certiorari, we now vacate the opinion of the appellate court, and affirm in part and reverse in part the order of the district court. Initially, we note as a matter of procedure that Bruner did not seek any affirmative relief as to the matter of the state's permit and licensing requirements. Nonetheless, we address his issue inasmuch as "it relates to the jurisdiction of the court and may be raised for the first time on appeal." *La Bellman v. Gleason & Sanders, Inc.,* 418 P.2d 949, 954 (Okla. 1966).

On certiorari, Bruner raises the same arguments challenging the State's jurisdiction to adjudicate this action, and the Commission's attempt to assert regulatory control over the sale of tobacco products conducted on restricted Indian Country. Bruner further contends that the State may not lawfully require Indian smoke shop retailers to obtain licenses and permits from the Commission to conduct business in Indian Country.

■ Bruner's initial reliance upon the tribal sovereign immunity argument must fail. The Creek Nation is a federally recognized Indian Tribe, and

> Indian tribes retain 'attributes of sovereignty over both their members and their territory,' *United States v. Mazurie,* 419 U.S. 544, 557, 42 L.Ed.2d 706, 95 S.Ct. 710 [717] (1975), and 'tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States,' *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 154, 65 L.Ed.2d 10, 100 S.Ct. 2069 [2081] (1980).

*California v. Cabazon Bank of Mission Indians,* 480 U.S. 202, 207, 107 S.Ct. 1083, 1987, 94 L.Ed.2d 244 (1987). Nevertheless, the State of Oklahoma has the authority to tax all sales of cigarettes to non-tribal members. The United States Supreme Court has stated that a state may properly apply and enforce the collection of sales tax on tribal cigarette sales made to *nonmembers* of the tribe. *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *Washington v. Confederated Tribes of the Colville Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980).

■ Of further significance is the Supreme Court's recent holding in *Oklahoma Tax Commission v. Citizen Bank Potawatomi Indian Tribe of Oklahoma,* —— U.S. ——, ——, 111 S.Ct. 905, 911, 112 L.Ed.2d 1112 (1991):

> [T]he doctrine of tribal sovereign immunity does not prevent a State from requiring Indian retailers doing business on tribal reservations to collect a state imposed cigarette tax on their sales to nonmembers of the Tribe, [nor does the doctrine] excuse a tribe from all obligations to assist in the collection of validly imposed state sales taxes.

We find no need here for further elaboration on this contention. We affirm the decision of the district court on this point. The issue as to whether an Indian smoke shop retailer may be required to obtain a state license to conduct business for the tribe in Indian Country was addressed by the Supreme Court in *Moe, supra,* and rejected. We do likewise.

■ While state imposed cigarette sales taxes and record keeping requirements can be applied to an Indian conducting business in Indian Country, we are not persuaded that Indian cigarette retailers may be required to obtain state licenses and permits. The United States Constitution provides that the United States "Congress shall have Power ... To regulate Commerce ... with the Indian Tribes." U.S. Const. Art. I, Sec. 8, Cl. 3. See also, *California v. Cabazon, supra.* Consequently, the range of the state's regulatory authority over

commercial matters in Indian Country is limited.

 Bruner smoke shop is licensed by the principal chief of the Indian Tribe, supervised and operated by a member of the Tribe, and required to comply with tribal ordinances. The State does not have, nor has it ever had complete commercial and regulatory jurisdiction over Indians and their lands. The Commission has offered no evidence to support its contention that Indian cigarette retailers should be required to obtain state licenses and permits. In protecting Tribal sovereignty from State jurisdiction and control, we hold that the Commission does not have a lawful right to impose or enforce its license and permit requirements upon tribally licensed Indian cigarette retailers doing business in Indian Country on behalf of the Tribe. However, we think it reasonable that Indian retailers be required to register with the Commission. *Moe*, 425 U.S. at 480, 96 S.Ct. at 1645.

For the foregoing reasons, the judgment of the district court is AFFIRMED IN PART AND REVERSED IN PART.

LAVENDER, SIMMS, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., HODGES, V.C.J., and HARGRAVE and ALMA WILSON, JJ., concur in part; dissent in part.